AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | |
|---|---|
| United States of America<br>v.<br><br>Davetta Cox<br><br>*Defendant(s)* | Case No.<br>24-MJ- 7007 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **January 26, 2024,** in the county of **Coles** in the **Central** District of **Illinois**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1958 | Murder-for-Hire |

This criminal complaint is based on these facts:
See Affidavit of FBI Special Agent Jorge Martinez, which is attached hereto and incorporated herein.

☑ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Jorge Martinez
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/27/2024

Eric Long
Digitally signed by Eric Long
Date: 2024.01.27 09:06:28 -06'00'
*Judge's signature*

City and state:  Urbana, Illinois

Eric I. Long, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

I, Jorge Martinez, being first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since February 13, 2022. Prior to employment by the FBI, I was a Chicago Police Officer for nine years, working violent street crimes, gangs, and narcotics. Through my career in law enforcement, I have been involved in hundreds of investigations. I have aided in collection of evidence, interviewed persons engaged in criminal activities and persons victimized by crime, and assisted or led in the arrest of multiple defendants. I successfully completed law enforcement training at the Chicago Police Department Training Academy in 2013 and also completed an additional five-month training program at the FBI Academy in Quantico, Virginia, in 2022. Those trainings covered an array of topics, including the collection of evidence, interview techniques, undercover operations, and legal topics.

2. I make this affidavit in support of issuance of a criminal complaint and arrest warrant for Davetta N. COX (D.O.B. ▮▮▮▮▮▮) (hereinafter "COX") charging COX with murder for hire, in violation of Title 18, United States Code, Section 1958.

3. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information

1

gained through my training and experience. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

### Background

4. Davetta COX and Grayson Thomas were involved in a sexual relationship, and in July 2023, COX gave birth to their shared child, a boy. The relationship between COX and Thomas subsequently ended in December 2023, and COX and Thomas agreed to share equal custody of the minor. Upon information and belief, that agreement between COX and Thomas was not entered as a formal order by any court, but was agreed upon by both individuals.

5. As of January 23, 2024, COX resided at ▓▓▓▓▓▓▓▓▓▓▓▓ Illinois. Thomas resides in rural ▓▓▓▓▓▓ Illinois.

### Present Investigation

6. On January 17, 2024, a confidential informant (CI) contacted investigators with the Edgar County Sheriff's Office and the Illinois State Police. The confidential informant[1] advised investigators that he/she had been contacted by COX the day before, and that COX had asked the informant to kill Thomas. The CI stated that, on January 16, 2024, COX had initiated a telephone call with the CI advising the CI that COX wanted Thomas dead because Thomas was not allowing COX adequate custody

---

[1] The confidential informant has no prior felony convictions and is not working with law enforcement in consideration against any pending charges or on-going investigations or for financial gain.

2

time with their shared child. The informant had recorded this conversation with COX and provided the recording to investigators. In the recorded conversation from January 16, 2024, COX can be heard stating, "this needs D.E.A.D." and also stated, "that's what needs done." COX proceeded to advise the CI on the recorded call, "I'm not playing. If you can't get it done, let me know, and I'll move on. I want my son, that's what I want. 100% no trace. That's what I want. And I can get it, so, I know a few people. I've been kinda doing some research."

7. The informant also advised investigators that COX had another conversation by phone with the CI on January 17, 2024. That call was also recorded by the informant. On the January 17, 2024, call, COX stated, "I want you to find somebody who will kill him and not trace it back to me, or you, or anybody." COX also stated on this recorded call, "I just can't do it because I'll be number one suspect." COX stated, "I want my son, without his fucking disturbance anymore. I threatened court today, didn't work, so guess what we're doing, we're going to kill him."

8. Investigators asked that the CI continue the communications with COX and record any further discussions with her. The CI agreed to do so. Investigators further asked that the CI advise COX that the CI would not murder Thomas, but that the informant knew of another individual who could. The CI agreed to do so.

9. On January 24, 2024, the CI and COX spoke again on a recorded call. During this call, COX confirmed she wanted Thomas killed, stating, "I'm 100% sure. I just in no way can get caught." COX also stated, "I'm 100% sure, my only thing is going to be payment. And I have tax money but I also have bills." COX continued, "I'll get it

3

figured out. Yeah, I want it done 100%." The CI, as directed by law enforcement, advised COX that he/she would not murder Thomas but told COX that he/she knew of another individual who would kill Thomas in exchange for money. The CI then inquired of COX whether she wished to have her phone number given to this other individual. COX asked the CI to provide her phone number to the other individual for the purpose of securing someone to kill Thomas. The CI asked COX on recorded call more than four times whether she, in fact, wanted to proceed with this plan to hire another individual to kill her child's father; COX replied that if she did not hire someone to kill Thomas, she would kill Thomas herself. COX verbally confirmed more than four times on the recorded call that she did wish to hire someone to kill Thomas so she could obtain full custody of their shared child. The CI then advised COX that he/she would provide COX's phone number to the individual who the informant knew would be willing to kill Thomas in exchange for money. COX then stated "they better leave a voice mail and say 'period' or something" so she would know to call the individual back.

10. On January 25, 2024, at 8:49 PM (CST), an undercover law enforcement officer (hereinafter "UC") sent COX a text message, and the following exchange occurred:

UCE: Period

Cox: [*Liked "Period"*]

UCE: Can you talk?

Cox: No. People are still awake. But can tomorrow on the way to work. 9am Indiana time. 8am Illinois time.

4

UCE: Okay

Cox: If not 4pm Indiana time tomorrow afternoon.

Cox: *[Liked "Okay"]*

After a brief exchange of words, the two agreed to meet on January 26, 2024. COX told the UC to meet her at the parking lot of Rise Dispensary; she then provided a map showing the location of that business, at 909 Lincoln Avenue in Charleston, Illinois.

11. On January 26, 2024, the UC traveled to Charleston, Illinois, to meet with COX at the Rise Dispensary, as agreed. At approximately 4:42 PM, COX contacted the UC to advise that she was 45 minutes from the meeting location and was stopping at an ATM on the way. COX then continued to provide updates on her arrival time to the UC via text and phone call. Due to safety concerns by law enforcement, the UC requested that COX meet him in the parking lot at Wal-Mart, located at 2250 Lincoln Avenue in Charleston, Illinois; COX agreed to the changed meeting location. At approximately 5:08 p.m., the UC arrived at Wal-Mart. COX then contacted the UC by phone and advised that she would be arriving at Wal-Mart in a dark red Honda Accord. The UC provided a description of the UC vehicle and its location within the parking lot.

12. At approximately 5:20 p.m., surveilling officers observed a red Honda Accord arrive at the Wal-Mart parking lot. Law enforcement observed that vehicle travel toward the agreed upon location within the Wal-Mart parking lot and park next to the UC vehicle. COX was then observed by surveilling officers exiting her vehicle and entering the front passenger seat of the UC vehicle. The UC was equipped with audio/video recording devices that captured the following events. Upon entering the

5

UC vehicle, COX and the UC discussed background information, including various references to the prior text communications between them. COX advised the UC that she wished to have her child's father "gone." The UC asked COX to clarify what she meant by "gone," and COX stated she wanted Thomas "dead or disappeared." The UC again asked her to be specific, and COX stated she wanted him "dead" and that she had considered killing him herself but was wary of getting caught. COX then provided photographs of Thomas to the UC via text message to confirm who she wished to have killed. COX also provided the UC with Thomas' home and work addresses, his gym membership location, and his schedule. She also provided additional information aimed to ensure the success of the murder, warning that his family resided close to Thomas and that she did not want Thomas murdered when their shared child was with him. She further asked that the UC avoid "doing" anything at Thomas' residence or vehicle to ensure the safety of her child. COX then told the UC that she needed Thomas gone so that she would obtain custody of her child. The UC asked if COX was sure that she wished to move forward because it could not be undone once Thomas was killed; COX advised she was sure.

13. COX inquired how much she would need to pay; the UC advised it varied how much he was paid for his work. COX then stated that she would "guarantee" the UC $6,000 after she received her tax return in February or March 2024 and that she could save up more by that time. COX then requested that the UC kill Thomas in April or May 2024 to put additional time between his death and her break up with Thomas, which had occurred in December 2023. COX stated she did not want to be the primary

6

suspect and believed allowing additional time to lapse between the breakup and Thomas' death would prevent suspicion from falling on her. COX then advised that she had been agreeable with Thomas so as to avoid any appearance that she was angry with him and would continue to do so in order to avoid suspicion. The pair then discussed whether COX would be able to pay a downpayment of cash on January 26, 2024. COX advised that she had approximately $225 in U.S. currency with her that she had withdrawn from the ATM on the way to meet him, but that it was intended to pay for something else. COX then advised the UC that she could get $100 from an ATM.

14. After COX stated that she would pay the UC $6,000 for the murder of Thomas, law enforcement approached the vehicle and arrested COX. Following her arrest and advisement of *Miranda* warnings, COX stated she did not know why she was being detained and declined to speak with investigators.

## CONCLUSION

15. I respectfully submit that the foregoing information and evidence establishes probable cause to believe that COX committed the offense of murder for hire in violation of 18 U.S.C. § 1958 on January 26, 2024.

FURTHER AFFIANT SAYETH NAUGHT.

Special Agent Jorge Ariel Martinez
Federal Bureau of Investigation

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by electronic mail and telephone on January __27__, 2024.

Eric Long
Digitally signed by Eric Long
Date: 2024.01.27 09:06:57 -06'00'

ERIC I. LONG
United States Magistrate Judge

8